IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. BLAKE,<br><br>　　　　　　　Petitioner,<br><br>　　vs.<br><br>JEFFREY BEARD, Secretary, California Department of Corrections and Rehabilitation,[1]<br><br>　　　　　　　Respondent. | No. 2:12-cv-1912-JKS<br><br>MEMORANDUM DECISION |

　　　　James Lee Blake, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  At the time he filed his Petition, Blake was in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the Sierra Conservation Center.  It appears that he has been released on supervised parole as a search on the Department of Corrections and Rehabilitation's inmate locator website (http://inmatelocator.cdcr.ca.gov/, Inmate No. AA7411) has no record of him. Blake has not filed a change of address with this Court.  Respondent has answered, and Blake has replied.

---

　　　　[1]　　Because it appears that Blake has been released but is on post-release supervision, Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation, is substituted for Frank Chavez, former Warden, Sierra Conservation Center.  FED. R. CIV. P. 25(c).

I.  BACKGROUND/PRIOR PROCEEDINGS

On June 13, 2008, Blake was charged by information with five counts alleging various felony criminal offenses.  The information also alleged that Blake had two prior strike convictions.[2]

On direct appeal, the California Court of Appeals summarized the facts underlying Blake's indictment as follows:

> Officer Bob Barnes saw [Blake] driving a car that had been reported stolen.  Barnes called for assistance.  When backup arrived, Barnes activated his patrol car lights and "chirped" his siren to pull the car over.  [Blake] pulled over, but when a second officer ordered him to turn the car off, [Blake] revved the engine and drove away.
> Officer Barnes pursued [Blake] with lights and siren engaged.  Barnes pursued defendant for 33 minutes and over 52 miles.  [Blake] drove at speeds up to 110 miles per hour on Bond Road, Grant Line Road, Highway 99, Highway 50, Watt Avenue and Sierra Street (a residential neighborhood).  During the pursuit [Blake] repeatedly drove in oncoming traffic lanes (once for over six miles), crossed multiple traffic lanes, ran red lights and stop signs, and forced other cars to take evasive action to avoid a collision. At one point he swerved over two traffic lanes to avoid a "tack strip."
> [Blake] ultimately drove across a sidewalk and crashed into a ditch.  He attempted to flee on foot but he was apprehended by a police canine.

*People v. Blake*, No. C062779, 2011 WL 5299325, at *1 (Cal. Ct. App. Nov. 3, 2011).

Blake proceeded to jury trial on May 7, 2009.

During the court's voir dire, one juror, Juror No. 4, expressed nervousness about his participation in the proceedings.  He stated that he would rather be elsewhere but confirmed that he could be a fair juror to both parties.  He further stated that, while he did not think law enforcement manufactured charges, he did not believe that they were infallible.  He said that he would not vote to convict if the prosecution failed to meet its burden of proving guilt beyond a

---

[2]   *See* CAL. PENAL CODE §§ 667(a), 1170.12.

reasonable doubt.  He also acknowledged that he understood and had no concerns with juror obligations.

The next day, however, Juror No. 4 sought to be relieved of jury duty.  He asked to speak with the trial court privately, stating that he had "personal issues" that had "[n]othing to do with the case."  He explained that he was out of work and wished to spend his time looking for work. *Id.*  He also expressed discomfort that voir dire had been conducted in a courtroom full of people, and he did not like that his name was used in court.  He stated, "I mean, nothing personal with the Defendant or anything, but I don't know him.  I don't know what he is capable of, you know.  I don't know.  I'm not–I don't want to be insulting to anyone."  The trial court assured him that juror information was sealed and not part of any public record.

Defense counsel then asked Juror No. 4 if he had any concerns about his personal safety.  The juror responded, "You never know these days.  You know, people retaliate and stuff.  Who knows what could happen."  Defense counsel then asked whether the juror's verdict would be affected by his public safety concerns; the juror replied in the negative.  The court then asked Juror No. 4 whether he had any concerns about his ability to serve as a juror.  The juror again replied in the negative.  The trial court further asked, "Do you think you can be fair?  We have had all of this discussion, we had some further discussion now.  Do you have concerns at all about your ability to remain fair throughout the process?"  Juror No. 4 responded, "No."

Outside the presence of the juror, defense counsel moved to excuse Juror No. 4 for cause, stating that he did not believe the juror's assurance of fairness.  The court denied the motion, noting that it was becoming more common for jurors to express concern about their name being made public and that Juror No. 4 had indicated that "he can set aside those concerns and he can

3

be fair in considering this case." Defense counsel did not move to re-open peremptory challenges.

At the conclusion of trial, the jury convicted Blake of one count of wanton evading, one count of driving against traffic while evading, and one count of resisting arrest.

At sentencing on August 7, 2009, defense counsel argued that the trial court should strike one of Blake's prior convictions pursuant to *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996). Counsel argued that no one had been injured in the current case; that the two residential burglary strike convictions were approximately ten years old; that Blake was not problematic while in prison or on parole; and that, since he was discharged from parole, Blake had only been convicted of "a couple of misdemeanor convictions." Blake also apologized to the court directly, contending that the current offense was merely a relapse he blamed on his methamphetamine use.

The court denied the request. Although the court recognized that Blake had a nearly five-year period when "things seemed to be going relatively well for him," it stated that his prior convictions were serious and put him "on notice that he did actually have to, in effect, toll the line in the future." The court also noted he had not been crime-free since his release from jail and indeed had led police on two other high-speed chases prior to the current offense. The court further acknowledged that, while it was true that no injuries resulted from his current offense, Blake was "extraordinarily lucky that no one was killed in this particular chase." It concluded, "The Court does not believe that the prospects of [Blake's] future are positive." The court then sentenced Blake to an aggregate term of 25 years in prison.

4

Through counsel, Blake appealed the conviction to the California Court of Appeal, arguing that he was subject to juror bias and multiple convictions and that the trial court abused its discretion when it refused to strike one of Blake's prior convictions. The appellate court denied his appeal in a reasoned opinion. *Blake*, 2011 WL 5299325, at *1. Blake petitioned for review of the denial to the state supreme court, which was denied without comment on January 11, 2012.

Blake timely filed a Petition for a Writ of Habeas Corpus to this Court on July 17, 2012.

## II. GROUNDS/CLAIMS

In his *pro se* Petition, Blake asserts three grounds for habeas relief. First, Blake contends that the trial court violated his right to an impartial jury when it refused to discharge a seated juror who "expressed fear of retaliation." He next claims that he was subject to impermissible multiple conviction because his conviction for violating California Vehicle Code § 2800.4 necessarily included the offense of Vehicle Code § 2800.2 of which he was also convicted. Finally, Blake argues that the trial court abused its discretion when it declined to strike one of his prior felony convictions pursuant to Penal Code § 1385.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim One: Juror Bias

Blake first argues that he was denied his right to an impartial jury when the trial court refused to discharge for good cause a juror who "expressed fear of retaliation."  The Sixth Amendment guarantees criminal defendants the right to a "fair trial by a panel of impartial, 'indifferent' jurors."  *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).  "Although doubts regarding bias must be resolved against the juror, the defendants bear the burden of showing that the prospective juror was actually biased, and that the [trial] court abused its discretion or committed manifest error when it failed to excuse her for cause."  *United States v. Maloney*, 699 F.3d 1130, 1135 (9th Cir. 2012) (internal citations, brackets, ellipses, and quotation marks omitted).  "If only one juror is unduly biased or prejudiced or improperly influenced, the criminal defendant is denied his Sixth Amendment right to an impartial panel."  *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1997).

Blake fails to demonstrate, however, the existence of juror bias.  As the Court of Appeal recognized when it denied this claim on direct appeal:

> The trial court specifically asked Juror No. 4 if his concerns about his safety would affect his judgment.  Juror No. 4 said they would not.  The trial court also asked the juror if his concerns would affect his ability to remain fair, and the juror said they would not.  The trial court believed the juror's assurances and expressly relied on them in denying the motion to discharge Juror No. 4.  Those assurances were substantial evidence

7

supporting the trial court's determination that the juror was not actually biased against defendant, and the record makes clear the trial court actually relied on that evidence.

*Blake*, 2011 WL 5299325, at *3.

Blake argues that "Juror No. 4's fear of retaliation by [Blake] and the bias expressed by such fear was not dispelled by his mere agreement that he could be fair." But a juror's "definitive and unequivocal" statements support a trial court's finding of impartiality. *See Maloney*, 699 F.3d at 1137-38 & n.1. A trial judge's finding that a juror was not biased is a factual finding presumed to be correct because "resolution [of the juror impartiality issue] depends heavily on the trial court's appraisal of witness credibility and demeanor." *Thompson v. Keohane*, 516 U.S. 99, 111 (1995); *see, e.g.*, *Wainwright v. Witt*, 469 U.S. 412, 428-29 (1985); *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). This presumption of correctness also applies to implicit factual findings. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Here, Blake's bare assertion that Juror No. 4 was biased does not meet his burden of adducing clear and convincing evidence sufficient to overcome the presumption of correctedness afforded the trial court's finding of impartiality. *See* 28 U.S.C. § 2254(e)(1). Accordingly, the state court's rejection of Blake's juror bias claim did not contravene or unreasonably apply federal law, and Blake is not entitled to relief on this ground.

<u>Claim Two: Multiple Convictions</u>

In his second claim for relief, Blake contends that his "conviction for violating [California] Vehicle Code § 2800.4 must be reversed because it constitutes an impermissible multiple conviction insofar as it is a necessarily included offense in Vehicle Code § 2800.2." Blake raised this claim on direct appeal, contending that the convictions were based on necessarily included offenses and thus were prohibited under state law. Blake's Petition again

raises this claim as a violation of state law only.  Such state law-based claim fails to raise a claim of constitutional dimension cognizable in this Court because this Court is bound by the state court's interpretation of California state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

Construing Blake's *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court may discern that Blake's Petition additionally alleges a double jeopardy violation in violation of federal law.  The Double Jeopardy Clause of the Constitution provides that no person shall "be subject for the same offen[s]e to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The clause is enforced against the states through the Fourteenth Amendment.  *Benton v. Maryland*, 395 U.S. 784, 787 (1969).  The Supreme Court has previously held that this clause protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *Monge v. California*, 524 U.S. 721, 727-28 (1998) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . ." *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  "If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Brown*, 432

U.S. at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). As the Court of Appeal concluded on direct review of Blake's conviction:

> Section 2800.4 is not necessarily included in section 2800.2, because it is possible to violate section 2800.2 without also violating section 2800.4. Section 2800.2 is violated "[i]f a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." (§ 2800.2, subd. (a).) On the other hand, section 2800.4 is violated "[w]henever a person willfully flees or attempts to elude a pursuing peace officer in violation of Section 2800.1, and the person operating the pursued vehicle willfully drives that vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway." (§ 2800.4.)
>    [Blake] argues that a person who violates section 2800.2 while driving on the wrong side of the road necessarily violates section 2800.4 as well. That may be true, but it is also possible to violate section 2800.2 in other ways. The traffic violations that could support a conviction under section 2800.2 include driving under the influence (§ 12810, subd. (b), (d)(2) & (i)(4)), failing to stop after an accident (§ 12810, subd. (a)), engaging in street racing (§ 12810, subd. (d)(1)), failing to properly secure a child passenger in a child seat (§ 12810, subd. (h)), driving with a suspended license (§ 12810, subd. (e)), driving with someone in the trunk of the car (§ 12810, subd. (i)(3)), or "any other traffic conviction involving the safe operation of a motor vehicle upon the highway" (§ 12810, subd. (f)). The statutory elements of section 2800.2 do not include all of the elements of section 2800.4. Accordingly, section 2800.4 is not a necessarily included offense of section 2800.2.

*Blake*, 2011 WL 5299325, at *4.

Thus, the two convictions do not violate the "same elements" test of *Blockburger*, 284 U.S. at 304, and Blake is not entitled to relief on this ground either.

Claim Three: *Romero* Claim

Finally, Blake argues that "the trial court abused its discretion under [California] Penal Code § 1385 when it declined to strike one of [his] prior serious felony convictions." Under § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of

10

sentencing under the state's Three Strikes law;[3] such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case. *Romero*, 917 P.2d at 632.

The thrust of Blake's claim is that the trial court erroneously failed to exercise its discretion to strike one of his prior serious felony convictions when imposing Blake's sentence. Such claim, however, presents only a state law sentencing error that is not cognizable on federal habeas review. *See Souch v. Schiavo*, 289 F.3d 616, 623 (9th Cir. 2002) (claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and thus was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); *see also Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68. Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[4] Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion

---

[3]     *See* CAL. PENAL CODE §§ 667(a)(1) & (b)-(i), 1170.12(a)-(d).

[4]     At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000). This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc). The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

was 'an unreasonable application of . . . clearly established Federal law.'" (quoting § 2254(d)(1))).

Even assuming that Blake is correct that the trial court misapplied California law when denying his motion, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not warrant habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see also Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (declining to examine state court's determination that habeas petitioner's prior conviction was for a "serious felony" under state sentencing regime). Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this court therefore must defer to the California courts' application of the state's three strikes law unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation," *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). Blake does not allege that the state court's application of the three strikes law was either untenable or done to avoid federal review of his sentence.

Nor has Blake shown that the trial court's *Romero* decision was arbitrary, capricious, or fundamentally unfair in violation of federal due process. *See Christian*, 41 F.3d at 469. As the appellate court considered on direct appeal of Blake's conviction:

> [T]he trial court was supplied with ample information regarding [Blake's] background, character, and prospects. [Blake] had a long-standing drug addiction problem, but he was employable and he had shown himself capable of being a responsible parent and partner. He also had a significant criminal history. In 1997, he committed a forgery and theft. Two months later, he committed a residential burglary and stole a rifle. Eight months later, while still on probation, he committed another burglary. Sentenced to four years in prison, he was released in October 2001 and discharged from parole in October 2004. Less than two years later, he was found in possession of a concealed knife, counterfeit money and narcotics paraphernalia. One month after that, while under the influence of methamphetamine, he fled from police

>       officers by driving through multiple red lights, weaving through lanes of traffic and
> reaching speeds of 115 miles per hour.  Then, in May 2007, while driving a stolen SUV,
> [Blake] led officers on another high speed chase, running red lights and driving against
> the flow of traffic. When he stopped, he fled from the officers on foot before he was
> caught. The instant offenses occurred a few months later.
>       In evaluating [Blake's] *Romero* motion, the trial court considered the probation
> report, the papers and argument from counsel, and [Blake's] statement at the hearing.
> The trial court noted that things had been going "relatively well" for [Blake] between
> October 2001 and March 2006, but that things deteriorated after that. The trial court said
> it was lucky nobody had been killed in any of the high-speed chases, but the evidence at
> trial suggested [Blake]  had intentionally tried to cause accidents to delay the pursuing
> officers.  The trial court denied the *Romero* motion.

*Blake*, 2011 WL 5299325, at *5.

The record therefore demonstrates that the trial court fully considered the relevant circumstances in Blake's case before reasonably determining that dismissal of his prior strike conviction was inappropriate.  Accordingly, there is no reasonable basis to conclude that the trial court's denial of Blake's *Romero* motion violated any of Blake's federal constitutional rights.

## V. CONCLUSION AND ORDER

Blake is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 3, 2014.

/s/James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
United States District Judge
